**Paul Samuel PERVELER,**
**Petitioner–Appellant,**

v.

**Wayne ESTELLE, Warden; Board of Prison Terms; Ron E. Koenig,**
**Respondents–Appellees.**

No. 90–56314.

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 5, 1991.*

Decided Sept. 8, 1992.

---

* The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34–4 and Fed.R.App.P. 34(a).

Paul Samuel Perveler, in pro per.

Jane Catherine Malich, Deputy Atty. Gen., Los Angeles, Cal., for respondents-appellees.

Before: BROWNING, FERGUSON and REINHARDT, Circuit Judges.

PER CURIAM:

Paul Samuel Perveler, serving a life sentence in California state prison, appeals pro se the district court's denial of his petition for a writ of habeas corpus. Perveler argues the California Board of Prison Terms' decision to rescind his parole date violated due process. We affirm.

I

In 1969, Perveler was convicted of two counts of first degree murder and one count of attempted murder. The murder victims were Cheryl Perveler, his second wife, and Marlin Cromwell, the husband of his co-defendant, Christina Cromwell. The victim of the attempted murder was Perveler's first wife, Lela Halverson.

In 1978 the state held a parole suitability hearing at which Perveler testified he was innocent of Cheryl's murder, did not intend to kill Lela, only assault her, and his motive for the attack upon Lela was jealous rage partially induced by alcohol. Christina Cromwell did not testify. The state set a parole date of June 6, 1986. This date was later advanced to August 6, 1985 because of Perveler's positive record in prison.

In November 1983, the Board of Prison Terms [Board] held another parole suitability hearing, determined there was new information indicating parole should not be granted, and rescinded Perveler's parole date. The Board's decision was vacated by a California state court on the ground Perveler had not received adequate assistance of counsel at the hearing.

In August 1986, the Board held yet another hearing to consider Perveler's suitability for parole. The Board found good cause to rescind Perveler's parole date based on four grounds: [1] (1) based on testimony of Christina Cromwell, the Board found Perveler had admitted to a third party that he had planned to kill Cheryl, contrary to his 1978 testimony; (2) based on testimony of Lela and Christina and the findings of the 1983 investigation, the Board found Perveler did attempt to kill Lela, not just assault her, as he testified in 1978; (3) based on testimony of Lela and Christina, the Board found Perveler tried to kill Lela for insurance money rather than because of a jealous rage, contrary to his 1978 testimony; and (4) based on the testimony of Christina, Lela, and Perveler's mother, the Board found Perveler had attempted to kill his parents in Mexico in 1966.

---

1.  The applicable regulations provide:
    The ISL (Indeterminate Sentencing Law) parole date of an ISL prisoner or the parole date of a life or nonlife 1168 prisoner may be postponed or rescinded for good cause at a rescission hearing.
    15 California Code of Regulations [CCR] § 2450.
    Department staff shall report to the board ... conduct which may result in rescission proceedings. The board shall determine whether to initiate rescission proceedings. Examples

of conduct which must be reported to the board include:

.    .    .    .    .

(c) Other. Any new information which indicates that parole should not occur. Examples include: ... information significant to the original grant of parole was fraudulently withheld from the board; or fundamental errors occurred resulting in the improvident granting of a parole date.
15 CCR § 2451.

The Board concluded these findings, individually or taken together, were sufficient to justify rescission of Perveler's parole date, and to find Perveler was an unreasonable risk to society. Accordingly, the Board rescinded Perveler's parole date.

Perveler sought and was denied state habeas relief. He then brought this action in federal district court.

## II

■ We review a decision to grant or deny a habeas petition de novo. *Norris v. Risley*, 878 F.2d 1178, 1180 (9th Cir.1989).

■ Although the U.S. Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set, *see Jago v. Van Curen*, 454 U.S. 14, 102 S.Ct. 31, 70 L.Ed.2d 13 (1981), we assume, without deciding, that California law did confer such an interest upon Perveler. *See Jancsek v. Oregon Board of Parole*, 833 F.2d 1389, 1389–90 (9th Cir.1987) (assuming a liberty interest for purposes of appeal). We conclude, however, that Perveler was afforded due process in the rescission of his parole date.

Perveler attacks the sufficiency of the evidence upon which the decision to rescind was based. Although this court has not explicitly articulated the standard of proof necessary to support a decision to rescind a parole date, applicability of the "some evidence" standard follows logically from prior cases.

■ Due process is satisfied if there is "some evidence" in the record to support a

decision to revoke good time credits. *Superintendent v. Hill*, 472 U.S. 445, 457, 105 S.Ct. 2768, 2775, 86 L.Ed.2d 356 (1985). Both good time credits and parole dates are prospective benefits conditioned on good behavior and subject to review and withdrawal for cause. *See In re Powell*, 45 Cal.3d 894, 904, 248 Cal.Rptr. 431, 755 P.2d 881 (1988). We concur with other circuits that the "some evidence" standard also applies to rescission of a parole date, *see, e.g.*, *Brown v. Smith*, 828 F.2d 1493, 1494–95 (10th Cir.1987); *Brown v. Frey*, 807 F.2d 1407, 1414 (8th Cir.1986),[2] provided the evidence bears some indicia of reliability. *Cf. Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir.1987).

■ We have reviewed the transcript of the 1986 parole rescission hearing and conclude the Board did have "some evidence" to support its first three findings and its decision to revoke Perveler's parole. Christina Cromwell testified Perveler told her he intended to kill Cheryl. Reporter's Transcript [RT] at 134. She also testified Perveler told her he intended to kill Lela, not merely assault her. RT at 39, 45, 53. Lela Halverson testified she believed Perveler was trying to kill her, RT at 383, 386, and that Perveler later admitted to her that he was trying to kill her. RT at 401. Lastly, Christina testified Perveler's motive for attempting to kill Lela was not jealousy, but to obtain insurance money. RT at 54.[3] The Board stated its findings, individually or together, were sufficient to justify rescission of Perveler's parole date; we hold the first three findings, taken togeth-

---

**2.** California law does not impose a more stringent standard of proof. *See In re Powell*, 45 Cal.3d at 904, 248 Cal.Rptr. 431, 755 P.2d 881 (explicitly adopting the *Hill* standard in parole date rescission cases). Thus Perveler's argument that the Board's decision cannot stand because it failed to balance factors in his favor must be rejected.

**3.** Perveler argues none of this evidence is "new" as required by the Board's regulations. *See* supra note 1. Much of the testimony relied upon by the Board was not submitted to the Board at earlier hearings, and it showed Perveler's prior testimony to have been false.

Perveler also argues the Board was barred by its own regulations from considering evidence

upon which it relied. We conclude the state complied with its own rules, and therefore need not decide whether Perveler held a protected liberty interest in compliance. Perveler contends the Board could not consider evidence relating to the attempted murder of Lela because he had served his sentence for that crime. However, the regulations permit the consideration of past criminal history. 15 CCR § 2281(b). Perveler argues much of the evidence used against him was inadmissible hearsay. The Board may consider hearsay evidence under *In re Bell*, 36 Cal.App.3d 643, 647, 111 Cal.Rptr. 581 (1974) and, in any event, the evidence related to admissions by Perveler, a party opponent. *See* Cal.Evid.Code § 1220.

er, were sufficient and do not consider the Board's fourth finding that Perveler attempted to murder his parents.[4]

Perveler argues the evidence was unreliable because (1) the witnesses were unable to provide relevant detail; (2) the witnesses' testimony contained some inconsistencies; (3) the testimony was uncorroborated; and (4) the witnesses otherwise lacked credibility. As to the first two contentions, the witnesses testified about matters that had occurred twenty years earlier and could not be expected to recall with perfect accuracy; as to the third, there is no requirement in state or federal law that the evidence be corroborated; as to the fourth, we may not undertake an independent assessment of the credibility of the witnesses. *See Hill,* 472 U.S. at 455, 105 S.Ct. at 2774.

### III

Perveler asserts that application of the current parole regulations to him violates the Ex Post Facto clause. To make out an Ex Post Facto violation, Perveler must show the law was retrospectively applied and operated to his disadvantage. *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). Thus, Perveler must demonstrate his parole could not have been rescinded under prior law.[5] Copies of the pre–1976 directives included in the record do not expressly authorize the Board to rescind a parole date. They do, however, strongly imply that such power existed: "Any time a hearing officer reviews confidential case records in establishing, denying, revoking or rescinding parole...." California Adult Authority, Chairman's Directive No. 75/20, April 15, 1975 at 1.

The state denies any formal regulations governing parole decisions existed before 1976. *Cf. In re Stanworth,* 33 Cal.3d 176, 182, 187 Cal.Rptr. 783, 654 P.2d 1311 (1982) ("the Adult Authority exercised wide discretion in determining parole release dates. Few written guidelines, rules or decisions existed for reference"). The California Supreme Court relied upon the 1976 regulations to determine parole practice during the 1960s, indicating the 1976 regulations embodied the prior practice. *See id.* at 183, 187 Cal.Rptr. 783, 654 P.2d 1311. The 1976 regulations contain basically the same rescission standards as the present regulations. *See* Former 15 CCR § 2661(c) (1976).

Perveler has failed to show prior law barred rescission of his parole date.

AFFIRMED.

---

**4.** We therefore do not reach Perveler's claims that the attempted murder of his parents must be proved beyond a reasonable doubt, and that the Board was equitably estopped from lengthening his sentence based on the attempted murder of his parents. We note, however, that equitable estoppel "is not a claim that a *state* prisoner may raise in a habeas corpus proceeding in federal court." *O'Bremski v. Maass,* 915 F.2d 418, 423 (9th Cir.1990) (original emphasis).

**5.** Perveler argues he should have been paroled in August 1985 because a prior version of § 2292 provided the prisoner "shall retain" his old parole date. However, the section does not state the parole date could not have been rescinded for good cause. *See* Former 15 CCR § 2292 (1978).