Manuel CASS, Jr., Petitioner,

v.

Jeanne WOODFORD, Director, et al., Respondents.

No. 04 CV 1138 DMS (POR).

United States District Court, S.D. California.

May 9, 2006.

Manuel Cass, Jr., Blythe, CA, pro se.

Attorney General, State of California, Office of the Attorney General, San Diego, CA, for Respondents.

## ORDER (1) ADOPTING REPORT AND RECOMMENDATION OF MAGIS-TRATE JUDGE AND (2) DENYING PETITION FOR WRIT OF HABE-AS CORPUS

SABRAW, District Judge.

Petitioner Manuel Cass, Jr., a prisoner in state custody proceeding *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is serving a sentence of 17–years–to–life for second degree murder. He asserts the California Board of Prison Terms ("parole board" or "board") deprived him of due process of law when it denied his fourth request for parole by relying solely on pre-incarceration conduct, namely the circumstances of his underlying offense—second degree murder—despite evidence of exemplary behavior and rehabilitation during his fifteen years of imprisonment. In support of this claim, Petitioner relies upon a Ninth Circuit decision, *Biggs v. Terhune*, 334 F.3d 910 (9th Cir.2003), for the proposition that continued reliance on "unchanging factors"—such as the commitment offense—as the sole basis to repeatedly deny parole violates due process. Petitioner also claims the board's decision was arbitrary and capricious.

The Magistrate Judge issued a Report and Recommendation ("R & R"), first noting under settled law that California's parole statute creates in every inmate, including Petitioner, a cognizable liberty interest in parole which is protected by the due process clause.[1] The R & R nevertheless rejected Petitioner's claim under *Biggs*, noting that (a) the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") only permits reliance on clearly established holdings of the United States Supreme Court as a basis to overturn a state court decision, and (b) the Supreme Court has not addressed whether continued reliance on unchanging factors to repeatedly deny parole violates due process. The R & R also rejected Petitioner's claim that the board's decision to deny parole was arbitrary and capricious. Petitioner timely filed objections to the R & R, which the Court now considers. 28 U.S.C. § 636(b)(1)(B).

## I.

### DISCUSSION

Petitioner initially argues the Magistrate Judge erroneously dismissed *Biggs*

---

1. The R & R mistakenly referred to the Fifth Amendment when Petitioner's challenge arises under the Fourteenth Amendment. This misstatement, however, is immaterial because the due process protections of the Fifth and Fourteenth Amendments are coextensive with regard to an inmate's liberty interest in parole. *See generally Curry v. McCanless*, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339 (1939); *Wallace v. Christensen*, 802 F.2d 1539, 1552–53 (9th Cir.1986) (en banc) (delineating judicial review for constitutional error of federal parole board's decisions).

as a source of habeas relief.[2] In conjunction with this argument, Petitioner asserts the Magistrate Judge applied the wrong standard of review.

### A. *Standard of Review*

Instead of applying AEDPA's standard of review, Petitioner asserts the Court should simply determine whether there is "some evidence" to support the board's decision. Petitioner misapprehends the nature of habeas review under AEDPA.

Although the Ninth Circuit has held that AEDPA's certificate of appealability requirement does not apply to decisions of administrative bodies, such as the parole board, *see Rosas v. Nielsen,* 428 F.3d 1229 (9th Cir.2005) (per curiam), the court has never concluded that AEDPA does not apply to habeas review of a state court decision upholding a parole board's denial of parole. *See id.* at 1232 (applying AEDPA's standard of review to state court decision upholding board's denial of parole); *McQuillion v. Duncan,* 306 F.3d 895, 900–01 (9th Cir.2002) (assuming AEDPA standard of review applies to decision of parole board reviewed by state court). *See also Shelby v. Bartlett,* 391 F.3d 1061 (9th Cir.2004) (finding AEDPA's one-year statute of limitations applies to habeas petitions challenging state administrative decisions). Because Petitioner's claim of due process violation by the parole board was heard by the state court on collateral review, his claim has been "adjudicated on the merits in [a] State court proceeding" within the meaning of AEDPA. *McQuillion,* 306 F.3d at 900 (citing *White v. Indiana Parole Bd.,* 266 F.3d 759, 763–64 (7th Cir.2001)). Accordingly, Petitioner's objection to the R & R on this ground is overruled.

### B. *AEDPA and Biggs*

Next, Petitioner contends the R & R does not comply with the "spirit" of the Ninth Circuit's decision in *Biggs.* The court in *Biggs* observed that a due process violation could occur if the parole board continued to rely on unchanging factors—such as the inmate's social history before committing the crime and the nature of the crime itself—to deny parole even though the inmate's behavior in prison demonstrated remorse and rehabilitation. 334 F.3d at 916–17. The *Biggs* court further noted that the parole board's determination whether to grant or deny parole is one of equity and requires a careful balancing and assessment of factors under both California's parole statute and the due process clause of the United States Constitution. *Id.* at 916. Thus, the court concluded that "the parole board's *sole* supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole [could] be *initially* justified as fulfilling the requirements set forth by state law." *Id.* at 916 (emphasis added). But the court cautioned: "Over time, however, should [the inmate] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him parole simply because of the nature of [the] offense and prior conduct would raise serious questions involving his liberty interest in parole." *Id.*

Several district courts have seized on the language in *Biggs,* and found error when the parole board repeatedly ignored evidence of an inmate's exemplary post-incarceration development and rehabilitation, and placed decisive weight on the nature of the crime and other "unchanging" factors. In support, Petitioner cites:

---

**2.** Petitioner also objects to the statement in the R & R that he did not attempt to dispute the accuracy of factual determinations in the state proceedings. Although Petitioner lists this as a separate objection, the Court concludes the critical attack is against the decision made by the parole board.

*Irons v. Warden of Calif. State Prison,* 358 F.Supp.2d 936, 947 (E.D.Cal.2005) (The board has "relied on these unchanging factors [*i.e.,* commitment offense and drug use at time of offense] at least four prior times" to deny parole; "[T]he continued reliance on these factors ... violated due process ...."); *Clay v. Kane,* No. 04–8663–VAP(AJW) (C.D.Cal. December 2, 2005) (similar); *Saifullah v. Carey,* No. 02–2664–MCE(DAD), 2005 WL 1555389 (E.D.Cal. June 28, 2005) (similar); *Yellen v. Butler,* No. S–01–2398–MCE, (E.D.Cal. March 31, 2004) (similar); *Masoner v. State,* No. 03–1261–ER, 2004 WL 1080177 (E.D.Cal. Jan 23, 2004) (similar).

■ The decisions on which Petitioner relies, however, do not constitute clearly established federal law sufficient to grant federal habeas relief. To determine what constitutes "clearly established federal law," the Supreme Court stated in *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), that the statutory phrase "refers to holdings, as opposed to dicta, of [Supreme Court] decisions as of the time of the relevant state-court decision," and that the source of clearly established law is restricted to the Supreme Court's jurisprudence. *Id.* at 412, 120 S.Ct. 1495. Therefore, although federal circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of federal law, *only* Supreme Court holdings are binding on the state courts and *only* those holdings need be reasonably applied. *See Shaw v. Terhune,* 353 F.3d 697, 702 (9th Cir.2003) (citation omitted) ("in the context of a habeas petition interpreted under the auspices of AEDPA, a Ninth Circuit decision without supporting Supreme Court precedent is not binding.")

In the present case, determining whether "clearly established federal law" exists is particularly important because California law is at odds with the federal cases relied upon by Petitioner. In contrast to the cases cited by Petitioner, the California Supreme Court has held that the "nature of the prisoner's offense, *alone,* can constitute a sufficient basis for denying parole." *In Re Rosenkrantz,* 29 Cal.4th 616, 682, 128 Cal.Rptr.2d 104, 59 P.3d 174 (2002) (emphasis added). "Although the parole authority is prohibited from adopting a blanket rule that automatically excludes parole for individuals who have been convicted of a particular type of offense, the authority properly may weigh heavily the degree of violence used and the amount of viciousness shown by a defendant." *Id.* at 682–83, 128 Cal.Rptr.2d 104, 59 P.3d 174. *See also In Re Dannenberg,* 34 Cal.4th 1061, 1070, 23 Cal.Rptr.3d 417, 104 P.3d 783, *cert. denied by Dannenberg v. Brown,* —— U.S. ——, 126 S.Ct. 92, 163 L.Ed.2d 109 (2005) (upholding board's denial of parole after numerous prior suitability hearings where "Dannenberg's crime indicated a continuing public danger, thus making him presently unsuitable for parole, because the murder was 'especially callous and cruel' and was committed for a trivial reason.") The California Supreme Court has thus made clear that parole may be denied *solely* on the circumstances of the commitment offense, as long as the parole board's decision is supported by some evidence that the crime involves "particularly egregious acts" beyond the minimum necessary to sustain a conviction for that type of offense. *Rosenkrantz,* 29 Cal.4th at 683, 128 Cal.Rptr.2d 104, 59 P.3d 174.

California's emphasis on the commitment offense derives from its statutes and regulations regarding parole. California Penal Code Section 3041(b) provides:

> The panel or board shall set a release date *unless* it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of

current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration . . . .

(emphasis added). Similarly, Section 2402(c)(1) of Title 15 of the California Code of Regulations provides a prisoner may be found unsuitable for parole if the board determines the commitment offense was "especially heinous, atrocious or cruel," as where the crime was carried out in a "dispassionate and calculated manner" or in a manner demonstrating an "exceptionally callous disregard for human suffering." [3]

Unlike the cases cited by Petitioner, the California Supreme Court has never held that continued reliance on unchanging factors violates due process. Moreover, the United States Supreme Court has never addressed this issue. In the absence of such precedent, AEDPA counsels against setting aside a state court determination under these circumstances on grounds that it is contrary to or an unreasonable application of clearly established federal law. While other case law, such as that from the Ninth Circuit, is persuasive authority "for purposes of determining whether a particular state court decision is an unreasonable application of Supreme Court law," *Vlasak v. Superior Court of California,* 329 F.3d 683, 687 (9th Cir.2003), this Court declines to conclude that *Biggs* provides authority—persuasive or otherwise—to overturn a state court determination that relies on California Supreme Court authority on an issue that has not been addressed by the United States Supreme Court.

## C. The State Court's Decision

The undisputed "clearly established federal law" that applies to Petitioner's claim is that a parole board's decision to deny parole must be supported by "some evidence" to satisfy due process of law. *Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Perveler v. Estelle,* 974 F.2d 1132, 1134 (9th Cir.1992). Here, the state court set out and applied this well-settled proposition, stating:

> "[T]he judicial branch is authorized to review the factual basis of a decision of the Board denying parole in order to ensure that the decision comports with the requirements of due process of law, but that in conducting such a review, the court may inquire only whether some evidence in the record before the Board supports the decision to deny parole, based upon the factors specified by statute and regulation."

(Lodgment Ex. J) (quoting *Rosenkrantz,* 29 Cal.4th at 658, 128 Cal.Rptr.2d 104, 59

---

**3.** Title 15, California Code of Regulations, § 2042(c), subds. (1)-(6) sets forth factors to be considered by the parole board tending to indicate unsuitability for parole, including among others, the nature of the commitment offense, prior record of violence, unstable social history, psychological factors, and negative institutional behavior. In particular, § 2042(c)(1) provides, ". . . The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include: (A) Multiple victims were attacked, injured or killed in the same or separate incidents; (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) The victim was abused, defiled or mutilat-

ed during or after the offense; (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering; (E) The motive for the crime is inexplicable or very trivial in relation to the offense."

Section 2042(d), subds. (1)-(9) sets forth circumstances tending to show suitability for release, including among others, lack of criminal history, remorse, stable social history, and good institutional behavior. Section 2042(d)(9) provides, "Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release." It is this last factor that is the apparent focus of Petitioner's claim.

P.3d 174). The state court also noted that the nature of the prisoner's offense "alone" could constitute a sufficient basis for denying parole. (*Id.*) It then focused on the nature of Petitioner's offense and the evidence before the board:

> [Petitioner] Cass and the 17–year–old victim, Anthony White, were once friends. They were involved in selling drugs and gang-type activity. They had a falling out and Cass threatened White. Early one morning Cass armed himself and drove to White's neighborhood. Cass saw White, confronted him and shot him in the head, neck, arms and hand. White died.... The circumstances of the murder show it was carried out in a dispassionate manner with callous disregard for human suffering (§ 2042, subd. (c)[ (1) ](B) & (D).) Some evidence supports the Board's decision.

(*Id.*)

Clearly, there is some evidence in the record of sufficiently reliable nature to show Petitioner's crime contains "particularly egregious acts" beyond the minimum necessary to sustain a conviction for second degree murder. Multiple gun shots at close range, including one to the head and one to the neck—motivated in part by a falling out over prior drug sales activities—supports the parole board's determination that the killing was "especially vicious and brutal ... demonstrat[ing] a disregard for human life." (Lodgment Ex. C.)

■ The parole board had evidence before it indicating that Petitioner had previously threatened the victim (*id.* at 10); that Petitioner simply approached the victim on the street and shot him, seven times (*id.* at 12 & 45); and that Petitioner "emptied the gun" into the victim. (Lodgment Ex. G.) On this record, Petitioner has not shown that the state court decision is contrary to or an unreasonable application of clearly established federal law. The state court properly considered whether some evidence supported the parole board's decision, and the court's reasoned decision will not be disturbed, particularly when the United States Supreme Court has not addressed whether continued reliance on unchanging factors violates due process. Given the absence of Supreme Court authority on this issue, the state court did not act unreasonably in following its own precedent, which authorizes a denial of parole based on the circumstances of the commitment offense alone.

## II.

### *CONCLUSION*

Upon due consideration of the arguments presented in the written briefs, a review of the record, and for the reasons stated, the Court **ADOPTS** the R & R and **DENIES** the Petition for a Writ of Habeas Corpus. The Clerk shall terminate this civil action.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS

PORTER, United States Magistrate Judge.

### I. INTRODUCTION

On June 7, 2004, Petitioner, Manuel Cass, Jr., a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner raises the following two grounds for relief: 1) the Board of Prison Terms (Board) denied parole based solely on the details of Petitioner's commitment offense, in violation of Petitioner's Fifth Amendment right to due process; and 2) the Board acted arbitrarily in denying parole, in violation of Petitioner's Fifth Amendment right to due process. Petitioner filed

the instant Petition on June 7, 2004. [Doc. No 1]. Thereafter, on September 15, 2004, Respondent filed an Answer and Memorandum of Points and Authorities. [Doc. Nos. 9 and 10]. Petitioner filed a Reply on September 29, 2004. [Doc. No. 12]. After a thorough review of the pleadings and all of the supporting documents, and for the reasons set forth below, this Court recommends that the Petition be DENIED.

## II. FACTUAL BACKGROUND

Factual determinations by the state court are presumed correct unless Petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).[1] Petitioner has not attempted to do so in this case. Therefore, the following facts are taken verbatim from the California Court of Appeal's opinion in Petitioner's case.

"Manuel Cass, Jr., pleaded guilty to second degree murder in 1988 and the court sentenced him to prison for a term of 17 years-to-life. On May 30, 2003, the Board of Prison Terms (Board) conducted a subsequent parole consideration hearing and found Cass unsuitable, concluding he posed an unreasonable risk of danger to society and a threat to public safety if he were released from prison. The Board found the murder was carried out in a vicious, brutal and dispassionate manner, demonstrating a disregard for human life. It also noted Cass sold drugs from the age of 16 until he was arrested for the murder at age 18...

The facts of Cass's crime are not concrete because he entered a guilty plea rather than proceed to trial. The probation officer's report shows Cass and the 17-year-old victim, Anthony White, were once friends. They were involved in selling drugs and gang-type activity. They had a falling out and Cass threatened White. Early one morning Cass armed himself and drove to White's neighborhood. Cass saw White, confronted him and shot him in the head, neck, arms and hand. White died." (Lodgment Ex. J at 1–2).

## III. STATE COURT PROCEEDINGS

On May 23, 2003, Petitioner submitted his fourth application to the Board to be considered an eligible candidate for parole. (Petition at 8). In a hearing on May 30, 2003, the Board denied Petitioner's application for parole, concluding that Petitioner would pose an unreasonable risk of danger to society if released. The Board stated that Petitioner's next hearing would take place in one year. (Lodgment Ex. C). On July 16, 2003, Petitioner filed an administrative appeal challenging the Board's decision. (Lodgment Ex. E). On October 15, 2003, the Board denied Petitioner's administrative appeal, stating that the Board properly denied parole based on California's parole statute. (Lodgment Ex. F).

On December 16, 2003, Petitioner filed a petition for writ of habeas corpus in the San Diego Superior Court, arguing that the Board's denial of parole violated due process under the state and federal constitutions. (Lodgment Ex. G). On January 13, 2004, the San Diego Superior Court denied the petition in a reasoned opinion. (Lodgment Ex. H). Thereafter, on February 19, 2004, Petitioner filed a petition for writ of habeas corpus in the California

---

1. 28 U.S.C. § 2254(e)(1) provides:

 "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

Court of Appeal. (Lodgment Ex. I). The Court of Appeal denied the petition in a reasoned opinion. (Lodgment Ex. J). Petitioner then filed a petition for review in the California Supreme Court on March 8, 2004. (Lodgment Ex. K). The California Supreme Court summarily denied the petition on May 12, 2004. (Lodgment Ex. L).

## IV. STANDARD OF REVIEW

Title 28, United States Code, § 2254(a), provides the scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a) (West 1994).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to habeas corpus petitions filed after 1996. *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The instant Petition was filed on June 7, 2004 and is therefore governed by the AEDPA. As amended, 28 U.S.C. § 2254(d) now reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceeding.

28 U.S.C.A. § 2254(d) (West Supp.2001).

To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2). *Williams v. Taylor,* 529 U.S. 362, 403, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decided a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams, supra* (529 U.S. at 412–413, 120 S.Ct. 1495).

The Ninth Circuit has further defined § 2254(d)(1):

> A state court's decision can be "contrary to" federal law either 1) if it fails to apply the correct controlling authority or 2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. [Citation omitted] A state court's decision can involve an "unreasonable application" of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively · unreasonable. [Citation omitted]

*Van Tran v. Lindsey,* 212 F.3d 1143, 1150 (9th Cir.2000), *cert. denied,* 531 U.S. 944, 121 S.Ct. 340, 148 L.Ed.2d 274 (2000).

Under the "contrary to" clause of § 2254(d)(1), a petitioner must "show not only that the state court failed to apply clearly established Supreme Court law but also that it reached an *erroneous* decision that warrants issuance of the writ under the standard in *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (requiring that the error have had a substantial or injurious effect on the verdict)." *Brown v. Mayle,* 283 F.3d 1019, 1024 (9th Cir.2002) (emphasis in original). Under the "unreasonableness clause," a federal court can only overturn a state court decision if the federal court is "left 'with a "firm conviction" that one answer, the one rejected by the [state] court, was correct and the other, the application of the federal law that the [state] court adopted, was erroneous—in other words that clear error occurred.'" *Id.*

Under § 2254(d)(2), a state court decision may be found to be " based on an unreasonable determination of the facts in light of the evidence presented" if it "is so clearly incorrect that it would not be debatable among reasonable jurists." *Jeffries v. Wood,* 114 F.3d 1484, 1500 (9th Cir.1997), *overruled on other grounds, Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The AEDPA requires deference be given to state court findings of fact, with state court factual determinations presumed correct unless the petitioner rebuts them by clear and convincing evidence. 28 U.S.C.A. § 2254(e)(1) (West Supp.2001). Claims under § 2254(d)(2) are rare, perhaps because of this deferential standard.

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590,

115 L.Ed.2d 706 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record "to determine whether the state court clearly erred in its application of controlling federal law." *Delgado v. Lewis,* 223 F.3d 976, 981 (9th Cir.2000).

Only claims that allege a violation of the petitioner's federal rights are cognizable on federal habeas review. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire* 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Federal habeas relief is not available for an alleged error in the interpretation or application of state law. *Id.* at 67–68, 112 S.Ct. 475. Only holdings of the United States Supreme Court, not *dicta,* can provide the basis for federal habeas relief. *Yarborough v. Alvarado,* 541 U.S. 652, 124 S.Ct. 2140, 2147, 158 L.Ed.2d 938 (June 1, 2004) (citing *Williams v. Taylor,* 529 U.S. at 412, 120 S.Ct. 1495).

## V. DISCUSSION

The pleadings in this case raise two issues to be addressed by this Court. First, Respondent contends that the Petition is moot because Petitioner is scheduled to receive another parole hearing. Second, Petitioner alleges that his Fifth Amendment right to due process was violated when the Board 1) denied parole based solely on his commitment offense; and 2) denied parole arbitrarily by failing to properly weigh the parole suitability factors established under California's parole statute.

### A. Mootness

Respondent asserts that the instant Petition is moot because Petitioner is already scheduled to receive a new parole hearing,

the only "remedy that he would receive if this Court were to grant the Writ." (Answer at 6). This argument is not persuasive because an ongoing controversy exists between the parties in the instant case.

Under Article III of the United States Constitution, "federal courts may adjudicate only actual, ongoing cases or controversies". To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision. *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). When a federal court lacks the power to grant the relief requested, the case is moot. *Picrin–Peron v. Rison,* 930 F.2d 773, 775 (9th Cir. 1991). An exception to the mootness doctrine exists when a controversy is "capable of repetition, yet evading review." *Hubbart v. Knapp,* 379 F.3d 773, 777 (9th Cir.2004) (quoting *Spencer v. Kemna,* 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998)). This exception applies when 1) the challenged action is too short in duration to be fully litigated prior to cessation or expiration; and 2) there is a reasonable expectation that the same complaining party will be subject to the same action again. *Id.*

The instant Petition is not moot because the controversy between Petitioner and Respondent is capable of repetition yet evading review. Here, the challenged action is the Board's denial of parole at a hearing on May 30, 2003, resulting in Petitioner's continued confinement. (Lodgment Ex. C). The instant Petition was filed on June 7, 2004. By the time Respondent filed an Answer on September 15, 2004, Petitioner was scheduled to receive another parole hearing five days later, on September 20, 2004. (Lodgment Ex. D). The challenged action, continued confinement after a parole denial, could not have been fully litigated during this short period of time. Moreover, the facts of Petitioner's case, discussed below, create a reasonable expectation that the Board would deny parole again at subsequent hearings. Therefore the instant Petition falls within the exception to the mootness doctrine, and this Court will proceed to the merits of the Petition.

### B. Merits of the Petition

To rule on a petition for habeas corpus, this Court must review the last reasoned state court decision that addresses the merits of each ground asserted to determine whether that decision was contrary to, or an unreasonable application of, clearly established federal law. *See Nunnemaker,* 501 U.S. at 803, 111 S.Ct. 2590; *Williams,* 529 U.S. at 412–13, 120 S.Ct. 1495. Each of Petitioner's grounds for relief are addressed below.

1. **Ground 1—The Board denied a grant of parole release based solely on the details of the commitment offense.**

For his first ground for relief, Petitioner argues that the Board violated his Fifth Amendment right to due process by relying on his commitment offense as the sole basis for denying parole. He alleges that the Board's reliance on the details of the commitment offense, without adequate consideration of his exemplary post-incarceration record, deprived him of a constitutionally protected liberty interest. (Petition at 6). Petitioner maintains that the law requires there to be "some evidence" in his *post-incarceration* record that indicates he remains a danger to public safety. (Petition at 7–8). He asserts that because his post-incarceration record does not contain facts indicating he is a danger to public safety, the Board violated his Fifth Amendment right to due process by deny-

ing parole. Petitioner thereby alleges that the Court of Appeal's decision, upholding the Board's ruling, was contrary to clearly established federal law. (Petition at 7). This Court will also assume that Petitioner argues that the Court of Appeal's opinion was an unreasonable application of clearly established federal law under § 2254(d)(1).[2]

 The California parole scheme "creates in every inmate a cognizable liberty interest in parole which is protected by the procedural safeguards of the Due Process Clause." *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir.2003) (citations omitted). The liberty interest is created "upon the incarceration of the inmate." *Id.* at 915. In parole hearings, prisoners are entitled to minimum procedures required by due process. *See Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 12, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). When a parole board reviews a prisoner's eligibility for parole, the requirements of due process are satisfied if "some evidence" supports the board's decision to deny parole. *See Superintendent v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (finding that the decisions of a prison disciplinary committee should be upheld if supported by "some evidence"); *Powell v. Gomez*, 33 F.3d 39 (9th Cir.1994) (upholding the parole board's denial of parole based on the "some evidence" standard); *Perveler v. Estelle*, 974 F.2d 1132, 1134 (9th Cir.1992) (applying the "some evidence" standard in reviewing parole denial). In addition, the evidence must have some indicia of reliability. *Id.* "The some evidence standard is minimally stringent, such that a decision will be upheld if there is any evidence in the record that could support

the conclusion reached by the...board." *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994) (citations and internal quotation marks omitted); *Hill*, 472 U.S. at 455–56, 105 S.Ct. 2768. In sum, denial of parole must be based on 1) some evidence that 2) bears some indicia of reliability.

The California Court of Appeal was the last state court to issue a reasoned opinion regarding the Board's denial of Petitioner's parole. (Lodgment Ex. J). The California Supreme Court summarily denied review of Petitioner's case. (Lodgment Ex. L). Therefore, this Court "looks through" the California Supreme Court's summary denial, and reviews the Court of Appeal's opinion. *Ylst v. Nunnemaker*, 501 U.S. at 803, 111 S.Ct. 2590 (1991). The Court of Appeal stated that "[s]ome evidence supports the Board's decision" for five reasons: 1) Petitioner and the victim were once friends; 2) Petitioner was involved in drug and gang activity prior to the offense; 3) Petitioner armed himself before driving to the victim's neighborhood; 4) Petitioner shot the victim multiple times; and 5) the murder was carried out "in a dispassionate manner with callous disregard for human suffering." (Lodgment Ex. J at 2). The Court of Appeal concluded that despite Petitioner's exemplary post-incarceration record, the Board properly relied on some evidence in arriving at their decision to deny parole. *Id.*

After a thorough review of the Court of Appeal's opinion and the record in this case, this Court finds that the Court of Appeal's decision was not contrary to, nor an unreasonable application of clearly established federal law. *See* § 2254(d)(1). The United States Supreme Court re-

---

**2.** Because it is not clear from the face of the Petition whether Petitioner is asserting his claim under the "contrary to" or the "unreasonable application of" standards under § 2254(d)(1), this Court will address Petition-

er's claim under both standards. This Court elects to construe the Petition as asserting claims under both standards because Petitioner is proceeding *pro se.*

quires only that a parole denial be supported by some evidence. *See Hill,* 472 U.S. at 455, 105 S.Ct. 2768; *Powell v. Gomez,* 33 F.3d 39; *Perveler v. Estelle,* 974 F.2d at 1134. There is no requirement that any of that evidence come from a prisoner's post-incarceration record. The California Court of Appeal properly applied the some evidence standard, articulating the specific evidence that the Board relied upon in denying Petitioner's parole. Nothing in the record suggests this evidence to be unreliable. *See Powell,* 33 F.3d at 40.

Petitioner relies on *Biggs v. Terhune,* 334 F.3d 910 to advance the proposition that a denial of parole is justified under the some evidence standard only if some of the evidence relied upon derives from the prisoner's *post-incarceration* record. (Reply at 21). In *Biggs,* the prisoner filed a petition for writ of habeas corpus, alleging that his Fifth Amendment right to due process was violated because the Board denied parole based solely on his commitment offense, despite his exemplary post-incarceration record. *See Id.* at 915. That was the prisoner's first parole hearing. *Id.* The Ninth Circuit concluded that the Board properly denied parole based on the Prisoner's commitment offense. *Id.* at 916. However, the court noted in *dicta* that "the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can initially be justified as fulfilling the requirements set forth by the state law. Over time, however, should [the prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole.... A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals

espoused by the prison system and could result in a due process violation." *Id.* at 916–917.

*Biggs* does not provide a basis for this Court to grant habeas relief in the instant case. First, the portion of *Biggs* on which Petitioner relies was *dicta.* Second, and more significantly, because *Biggs* is a Ninth Circuit Case, it is not "clearly established Federal law, as determined by the United States Supreme Court." § 2254(d)(1). Only holdings of the United States Supreme Court can provide bases for federal habeas relief. *Yarborough v. Alvarado,* 124 S.Ct. at 2147. Consequently, under the AEDPA standard of review, *Biggs* does not provide a basis for this Court to grant federal habeas relief.

Petitioner further argues that the ruling in *Masoner v. State,* 2004 WL 1080177, 2004 U.S. Dist. LEXIS 9221 (C.D.Cal. 2004) should compel this Court to grant habeas relief. (Reply at 21). The facts in *Masoner* are similar to those in the instant case. *See Masoner v. State,* 2003 WL 23512079, 2003 U.S. Dist. LEXIS 25401 (C.D.Cal.2003). In *Masoner,* the prisoner sought federal habeas relief after the Board denied parole based on his commitment offense and despite his sterling post-incarceration record. *Id.,* 2003 WL 23512079, *2, 2003 U.S. Dist. LEXIS 25401 at *6. The prisoner had served approximately 12 years of a 15–year–to–life sentence for second-degree murder. *Id.,* 2003 WL 23512079, *2, 2003 U.S. Dist. LEXIS 25401 at *6. He was convicted of second-degree murder after he drove while highly intoxicated, crashing into a house and killing a young girl inside. *Id.,* 2003 WL 23512079, **1–2, 2003 U.S. Dist. LEXIS 25401 at **4–5. The prisoner had previously filed two federal habeas petitions, both of which were denied. *Id.,* 2003 WL 23512079, *1, 2003 U.S. Dist. LEXIS 25401 at **2–3. He filed his third federal peti-

tion on February 21, 2003, challenging the Board's third denial of parole. *Id.,* 2003 WL 23512079, *3, 2003 U.S. Dist. LEXIS 25401 at *9. The Magistrate Judge recommended that the petition be dismissed because the Board's decision to deny parole was "supported by 'some evidence' in the record..." *Id.* 2003 WL 23512079, *5, 2003 U.S. Dist. LEXIS 25401 at *16. However, the District Court rejected the Magistrate Judge's Report and Recommendation. *See Masoner v. State,* 2004 WL 1080177, 2004 U.S. Dist. LEXIS 9221. The District Court, citing the discussion in *Biggs,* concluded that "this situation is exactly what *Biggs v. Terhune,* 334 F.3d 910 envisions when it suggests that repeated refusals by the [Board] to grant a parole date to an inmate with an exemplary record are a violation of the prisoner's Due Process rights." *Id.,* 2004 WL 1080177, *1, 2004 U.S.Dist. LEXIS 9221, at **3–4. The District Court therefore granted the petition for writ of habeas corpus and ordered the Board to set a parole date within 30 days. *Id.*

Under the narrow standard of review mandated by AEDPA, this Court's inquiry is limited to whether the state court's decision was contrary to or an unreasonably application of clearly established federal law as determined by the United States Supreme Court. There is no Supreme Court holding that compels this Court to grant habeas relief based upon the facts of the instant case. Therefore, this Court respectfully declines to adopt the reasoning of the court in *Masoner.*

### 2. Ground 2—The Board violated Petitioner's Fifth Amendment right to due process by denying parole arbitrarily.

For his second ground for relief, Petitioner alleges that the Board violated his Fifth Amendment right to due process by arbitrarily denying parole. Specifically, he argues that the Board acted arbitrarily by

failing to "give individualized consideration in the legislatively mandated weighing process," by relying on his commitment offense and prior criminality, while ignoring an exemplary prison record and positive Mental Health Evaluation Report. (Petition at 7–8).

■ In a parole release determination, due process requires only that 1) the inmate receive an opportunity to speak; and 2) the inmate receive the reasons for denial of parole. *Greenholtz,* 442 U.S. at 16, 99 S.Ct. 2100. The Board considered Petitioner's eligibility for parole in a hearing at Chuckawalla State Prison on May 30, 2003. (Lodgment Ex. C). Petitioner was represented by counsel and had the opportunity to speak on his own behalf at the parole hearing. Petitioner, his attorney, and the District Attorney presented evidence. (*Id.*) At the end of the hearing, the Board determined that Petitioner would pose an unreasonable risk of danger to society if released. The Board gave the following reasons for its decision: 1) the offense was carried out in an especially vicious and brutal manner; 2) the offense was carried out in a manner which demonstrates disregard for human life; 3) the San Diego Police Department and the District Attorney were opposed to parole; and 4) the positive factors of Petitioner's behavior did not outweigh the factors of unsuitability. (*Id.*)

Under AEDPA, it is not the role of this Court to consider Petitioner's claim that the Board improperly weighed the factors presented in California's parole statute. Federal habeas relief is not available for an alleged error in the interpretation or application of state law. *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). After a thorough review of Petitioner's parole hearing transcript, this Court finds that the record does not support Petitioner's argument

that the Board arbitrarily denied parole in violation of his Fifth Amendment right to due process. Petitioner was afforded all of the rights mandated by *Greenholtz.* Further, the Board's articulated reasons for denying parole were not arbitrary. Therefore, federal habeas relief is not appropriate based on Petitioner's second ground.

## VI. CONCLUSION AND ORDER

After a thorough review of the record in this matter and based on the foregoing analysis, **IT IS HEREBY RECOMMENDED** that the Petition for Writ of Habeas Corpus be **DENIED** and this action be **DISMISSED WITH PREJUDICE.**

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (West 1993).

**IT IS HEREBY ORDERED** that no later than April 7, 2005, any party may file and serve written objections with the Court and serve a copy on all parties. The document shall be entitled "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed and served no later than **ten days after being served with the objections.** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).